1

IN THE UNITED STATE DISTRICT COURT
THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-23622-CIV-SCOLA/OTAZO-REYES

JOSE ANGEL LUZARDO,
RAUNEL MANUEL LARA
ALONSO, and all others
similarly situated
under 29 U.S.C. 216b)
        Plaintiffs
    vs.
Triton Window
Distributors, INC., and
ALEJANDRO ACOSTA
        Defendants

                2525 Ponce De Leon Boulevard
                Coral Gables, Florida
                February 19, 2015, 4:04 p.m.

DEPOSITION OF RAUNEL MANUEL LARA ALONSO

      Taken on behalf of the Defendants before
LOIS E. GUFFEY, RDR, Notary Public in and for the
State of Florida at Large, pursuant to a Notice of
Taking Deposition filed in the above cause.

```
                                                                10
 1   before today?
 2        A.   No.
 3        Q.   Do you remember at any time -- sorry -- on
 4   September 20 -- on or around September 24th, 2014,
 5   having a meeting about performance with Mr. Gomez
 6   and Yoel?
 7        A.   Yes.
 8        Q.   When I say Yoel, do you -- who do you
 9   understand that to mean?
10        A.   Yoel Cabrera.
11        Q.   Was Yoel Cabrera also your supervisor at
12   Triton Window?
13        A.   Yes.
14        Q.   And there are some boxes checked here
15   saying insubordination and leaving the premises.
16   You don't remember anything leading to this, do
17   you?
18        A.   Could you repeat that?
19        Q.   Do you remember -- let me rephrase it a
20   little bit.  Do you remember -- do you have any
21   knowledge of what may have led to this document
22   being prepared?
23        A.   Well, supposedly I had been disrespectful,
24   because I speak somewhat in a loud voice, and it
25   was like a warning.  And I don't know why.  That
```

1  was the next day, the following day.  That's all.
2  I don't know why.
3      Q.  Did you ever talk to Mr. Gomez about why?
4      A.  Everything happened in the morning.  I
5  wasn't expecting it.
6      Q.  It happened in the morning of -- what --
7  the twenty -- I am assuming -- well, he said the
8  next -- do you remember it was September 23rd or
9  September 24th?
10     A.  It was not on that date.  That date is --
11 falls on a Saturday and I do not work for
12 Saturdays.  That happened on a Wednesday, the 21st.
13     Q.  Okay.  What happened on Wednesday, the
14 21st?  Can you describe it for me?
15     A.  I was called into the office supposedly
16 because of an error that I had made, which really
17 wasn't my error.  An inspector was called at 8:00
18 in the morning, and he supposedly stated that I,
19 because of my own fault, had not passed inspection.
20     Q.  Who -- I wasn't there, so bear along with
21 me.  Explain.  Who said that, because of your
22 fault, something didn't pass inspection?  Was it
23 talking about Mr. Gomez or the inspector?
24     A.  William Gomez.
25     Q.  So Mr. Gomez told you on the 21st that

12

1  there was a problem with an inspection and he
2  blamed you for it; is that correct?  Am I
3  understanding?
4      A.   Yes.
5      Q.   If you look at page 2, the second page
6  on -- go ahead.  Here is another writing by
7  Mr. Gomez.
8           MS. GARRETT:  Sorry.  On first sight they
9      look --
10          MR. TORRES:  They look very much alike.
11     Okay.  Not a problem.
12 BY MR. TORRES:
13     Q.   According to -- have you seen this page
14 before?
15     A.   No.
16     Q.   I am going to just read what it says here,
17 just get your reaction to it.  It was written here,
18 says that you were given instructions regarding an
19 inspection and then you started yelling and
20 complaining about the instructions, given to him by
21 William Gomez.
22     A.   As I told you, it's impossible for it --
23 for this to have been my fault.  It's not possible
24 for an inspector to come in at 8:00 in the morning
25 and a window has not been removed.

13

```
 1      Q.   Why is it impossible?
 2      A.   Because if the inspector comes in and
 3  there is no window, he can't see the framing.
 4      Q.   I am not sure I understand what you said,
 5  but I am trying to get your impression of this.  Do
 6  you remember you started -- do you remember yelling
 7  about anything on or around the 21st, 23rd of
 8  September, '14?
 9      A.   Okay.  No. I did raise -- but I did raise
10  my voice, like telling him it's impossible that
11  this was me.  But as I raised my voice, I also
12  apologized to him if I had offended him.
13      Q.   And him, being William Gomez?
14      A.   Yes.
15      Q.   Who worked at the company -- who worked at
16  Triton longer?  You or Mr. Gomez?
17      A.   Me.
18      Q.   And was Mr. Gomez your supervisor?
19      A.   Yes.
20      Q.   Did you have any other supervisors?
21      A.   Yoel Cabrera.
22      Q.   Let's go to the next page down.  This
23  performance documentation is dated September 19,
24  and it looks like it's, well, it says it's from
25  William Gomez.  Do you see where I am looking?
```

Raunel Lara

Luzardo v. Triton                                                                 2/19/2015

14

```
 1       A.    Yes.
 2       Q.    Do you remember seeing this document ever
 3  before?
 4       A.    No.
 5       Q.    This is the first time you have ever seen
 6  it in your life?
 7       A.    Yes.
 8             (Discussion off the record.)
 9  BY MR. TORRES:
10       Q.    According to this, Mr. Gomez is giving you
11  a warning about inappropriate behavior.  Do you
12  have any --
13       A.    I just -- I'm finding out now.
14       Q.    Do you recall, before September 19th or
15  21st, which was mid to late September, 2014, having
16  been warned or reprimanded or counseled in any way
17  according -- about your performance at Triton
18  Window?
19       A.    No.
20       Q.    Let's go through these documents.  If you
21  would turn to -- again, I am looking at the W-4,
22  Counsel.
23             Do you see down at the bottom where there
24  is a signature?
25       A.    Yes.
```

```
 1      Q.    So is it fair to say that Mr. Cabrera,
 2   Mr. Gomez, once he came on board, and Mr. Acosta,
 3   between them would have a knowledge of what was
 4   going on at your work site?
 5      A.    Yes.
 6      Q.    So if something was wrong, some
 7   instruction was not being followed, they would have
 8   first-hand knowledge?
 9      A.    Yes.
10      Q.    Tell me about when -- you continued to
11   install windows even as a team leader, correct?
12      A.    Yes.
13      Q.    Did you have an assistant?
14      A.    Assistant?
15      Q.    For the installation.
16      A.    Yes.
17      Q.    Who was your assistant?
18      A.    Norge.
19      Q.    And you were the lead installer?
20      A.    Yes.
21      Q.    So if I understand correctly, if you look
22   behind you, the windows here (indicating), some of
23   the panels you install are pretty big, correct?
24      A.    Yes.
25      Q.    As a matter of fact, a lot of them were
```

42

1   A.   No.

2   Q.   Have you spoken with Ramon Valdes

3   recently, let's say since this lawsuit was filed?

4   A.   No.

5   Q.   William Gomez.  How would William Gomez

6   have knowledge of the hours that you worked?

7   A.   Because he would arrive with us.

8   Q.   In the morning?

9   A.   Early, and in the afternoon.

10  Q.   So he would be there at 7:00 o'clock, but

11  he didn't go to your job site and come back with

12  you necessarily, right?

13  A.   Exactly.  He would wait for us in the

14  warehouse.

15  Q.   Other than looking at your time records,

16  how would he -- I mean, did he keep his own time

17  records?  Did you see him keeping that on

18  (indicating), you know --

19  A.   No.

20  Q.   Okay.  So if he were to look, he would

21  have to look at your -- your records from the time

22  clock, or as you say (indicating)?

23  A.   He would stand right next to the clock

24  when everybody would come in.

25  Q.   Okay.  So he would see you punch in, but

Raunel Lara

Luzardo v. Triton                                                    2/19/2015

46

```
 1       Q.   Are you telling me today -- is that going
 2   to be your testimony at trial:  I never worked less
 3   than 40 hours?
 4       A.   No.  Exactly.  Yes.
 5       Q.   Your testimony is that you always
 6   worked -- the number of hours per work week were 40
 7   or more each and every week that you worked with
 8   Triton Window?
 9       A.   Exactly.
10       Q.   We will come back to that in just a
11   second.  Hold that thought.  You also complained to
12   Yoel Cabrera and William Gomez that you wanted a
13   raise?
14       A.   Yes.
15       Q.   Did they give you the raise?
16       A.   No.
17       Q.   Is that why you got angry?
18       A.   No.
19       Q.   Do you know if Yoel Cabrera ever took any
20   action when you complained to him?
21       A.   Yoel?  No.
22       Q.   He was a friend, right?
23       A.   Yes.
24       Q.   Did you ever complain to William Gomez?
25       A.   Yes.
```